UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ROBERT DINGLE, JR.,

                Plaintiff,

  -against-                        2:13-cv-03913-CBA-VVP

ENTENMANN'S/BIMBO Bakeries USA

                Defendant.

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

JACKSON LEWIS LLP
*ATTORNEYS FOR DEFENDANT*
*ENTENMANN'S/BIMBO BAKERIES USA*
666 Third Avenue, 29th Floor
New York, New York 10017
(212) 545-4000

Attorney(s) of record:
A. Robert Fischer
Kristin L. Witherell

**TABLE OF CONTENTS**

**PAGE**

Table of Authorities .................................................................................................................... ii

I. PRELIMINARY STATEMENT ................................................................................. 1

II. SUMMARY OF ARGUMENT .................................................................................... 1

III. PROCEDURAL HISTORY ......................................................................................... 3

IV. RELEVANT FACTS .................................................................................................... 5

V. ARGUMENT ................................................................................................................. 6

    A. RELEVANT STANDARDS ............................................................................ 6

        1. Motion to Dismiss ................................................................................. 6

        2. Pleading Standard ................................................................................ 8

    B. PLAINTIFF'S CLAIMS ARE BARRED BY THE SETTLEMENT AGREEMENT ..................................................................................................... 8

    C. PLAINTIFF'S CLAIM FOR BREACH OF THE SETTLEMENT AGREEMENT MUST BE DISMISSED ............................................................ 12

    D. PLAINTIFF'S CLAIMS FOR RETALIATION MUST BE DISMISSED ............. 13

    E. PLAINTIFF'S CLAIMS RELATED TO HIS CRIMINAL CONVICTION MUST BE DISMISSED ..................................................................................... 14

VI. CONCLUSION ........................................................................................................... 16

## TABLE OF AUTHORITIES

Page(s)

CASES

Archie v. Grand Cent. P'shp,
   86 F. Supp. 2d 262 (S.D.N.Y. 2000)..................................................................................12

Banc of Am. Sec. LLC v. Solow Bldg. Co. II, L.L.C.,
   47 A.D.3d 239, 847 N.Y.S.2d 49 (1st Dep't 2007)..............................................................11

Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.
   447 F. Supp. 2d 329, 337 (S.D.N.Y. 2006)..........................................................................12

Brissett v. New York City Transit Auth.,
   No. 09 CV 874 (CBA) (LB), 2010 U.S. Dist. LEXIS 52722 (E.D.N.Y. May 27, 2010) ..........8

Crawford v. Lutheran Med. Ctr.,
   No. 08-CV-3429 (NGG) (LB), 2011 U.S. Dist. LEXIS 26072
   (E.D.N.Y. Mar. 9, 2011) ........................................................................................................7

Cuoco v. Moritsugu,
   222 F.3d 99 (2d Cir. 2000)....................................................................................................8

Day v. Distinctive Pers., Inc.,
   656 F. Supp. 2d 331 (E.D.N.Y. 2009) ..................................................................................8

Duane Morris LLP v. Astor Holdings Inc.,
   61 A.D.3d 418, 877 N.Y.S.2d 250 (1st Dep't 2009) ..........................................................11

Forrest v. Jewish Guild for the Blind,
   3 NY3d 295, 819 N.E.2d 998, 786 N.Y.S.2d 382 (2004)....................................................15

Hernandez v. Bankers Trust Co.,
   5 AD3d 146, 773 N.Y.S.2d 35 (2004) ................................................................................15

Hewett v. Leblang,
   No. 12 Civ. 1713 (PKC), 2012 U.S. Dist. LEXIS 93123 (S.D.N.Y. July 5, 2012) ..............11

Horne v. Buffalo Police Benevolent Ass'n,
   No. 07-CV-781C, 2010 U.S. Dist. LEXIS 53152 (W.D.N.Y. May 25, 2010) ....................13

Mendel v. Henry Phipps Plaza West, Inc.,
   27 A.D.3d 375, 813 N.Y.S.2d 66 (1st Dep't 2006) ............................................................11

Pace v. Ogden Servs. Corp.,
   257 AD2d 101, 692 N.Y.S.2d 220 (1999) ..........................................................................15

Patane v. Clark,
    508 F.3d 106 (2d Cir. 2007).................................................................................................6

Quinones v Eihab Human Services, Inc.,
    No. 150169-08, 2009 N.Y. Misc. LEXIS 5729 (N.Y. Sup. Ct. May 22, 2009) ..................13, 15

Rexnord Holdings, Inc. v. Bidermann,
    21 F.3d 522, 525 (2d Cir. 1994)............................................................................................12

Skluth v. United Merchants and Manufacturers, Inc.,
    163 A.D.2d 104, 559 N.Y.S.2d 280 (App. Div. 1st Dep't 1990) ...............................................9

Wait v. Beck's N. Am, Inc.,
    241 F. Supp. 2d 172 (N.D.N.Y. 2003)..............................................................................6, 10

**STATUTES**

28 U.S.C. § 1915(e)(2)(B)(i)............................................................................................................7, 8

Administrative Code of the City of New York § 8-107.......................................................................14

New York Correction Law, Article 23-A, § 752 ................................................................................14

**OTHER AUTHORITIES**

Fed. R. Civ. P. Rule 8 .....................................................................................................................7, 8

Fed. R. Civ. P. Rule 10(a)....................................................................................................................8

Fed. R. Civ. P. Rule 10(b)....................................................................................................................8

Fed. R. Civ. P. Rule 12(b)(6).....................................................................................................1, 6, 10

Fed. R. Civ. P. Rule 15(a)....................................................................................................................8

N.Y. Gen. Oblig. § 15-303..................................................................................................................9

Title VII, 42 U.S.C. §§ 2000e, *et seq*.......................................................................................1, 2, 3, 13

## I. PRELIMINARY STATEMENT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant, Entenmann's/Bimbo Bakeries USA ("Defendant"),[1] brings this Motion seeking to dismiss the Complaint filed by Plaintiff, Robert Dingle, Jr. ("Plaintiff") removed to this Court on July 12, 2013.

As set forth more fully below, Defendant's Motion should be granted because Plaintiff's allegations are barred under applicable New York law, or otherwise fail to state any claim for relief.

## II. SUMMARY OF ARGUMENT

Plaintiff's Complaint largely repeats the allegations he made in an earlier case, *Robert Dingle Jr. v. Bimbo Bakeries USA*, No. 1:13-cv-3913 (JFB) (AKT) 1:11-cv-02879-CBA-VVP ("Dingle I"). Defendant filed a motion to dismiss in that case, which remains pending before this Court.

In Dingle I, and in the instant action, Plaintiff claims a photograph of a man resembling Plaintiff was distributed throughout the Defendant's Brooklyn Depot where Plaintiff worked. Liberally construing Plaintiff's latest Complaint against Defendant, it appears he purports to allege claims for: (1) Title VII, 42 U.S.C. §§ 2000e, et seq., hostile work environment, premised on the allegations that his co-workers sexually harassed him; and (2) Title VII retaliation, premised on the allegations that Defendant did not adequately address his complaints of sexual harassment, and instead retaliated against him and ultimately terminated his employment.

---

[1] Bimbo Bakeries USA is a trade name. As of January 2010, Entenmann's, Inc. has not been a separate, actively registered business entity. Entenmann's/Entenmann's, Inc. operates solely as a brand. Stroehmann Line-Haul, L.P. (not "Entenmann's/Bimbo Bakeries USA") was the employer of Plaintiff. Stroehmann Line-Haul, L.P. is incorporated and has a principal place of business in Pennsylvania.

1

On January 8, 2013, Dingle executed a Settlement Agreement (the "Settlement Agreement) with the Defendant and the Bakery Confectionary, Tobacco Workers and Grain Millers International Union, Local No. 53 (the "Union"), pursuant to which Plaintiff released his claims under the applicable Collective Bargaining Agreement ("CBA") in exchange for his involuntary termination being recast as a resignation and payment from the Defendant in the amount of $13,000, less statutory withholdings. Plaintiff's execution of this Settlement Agreement, however, operates as a bar to his claims under the CBA, including those under the nondiscrimination provision contained in the CBA.

Despite acknowledging that Plaintiff "fully understood all the provisions of this Settlement Agreement" and noting that the "company insisted that the money had to be taxed by the company and paid as back pay, under a W2 form," Plaintiff now attempts to claim Defendant breached the Settlement Agreement by improperly withholding taxes. (Compl. ¶ 15.) As set forth more fully below, Plaintiff cannot adequately plead a claim for breach of contract because he entered the Settlement Agreement fully knowing payment would be made subject to taxes on a W2 form (but now disagrees with that tax characterization).

Notwithstanding the Settlement Agreement, Plaintiff's latest Complaint does not alter Defendant's position detailed in the motions to dismiss submitted in Dingle I. At best, Plaintiff's Title VII claims suggest a possible personal animus against him by his coworkers. However, they do not allege any viable claim under Title VII. Indeed, Plaintiff has not alleged any fact supporting a claim that Plaintiff was harassed *because of* his gender. Accordingly, in the alternative, Plaintiff's causes of action under Title VII and his retaliation claim must be dismissed for the reasons set forth in the motions to dismiss submitted in Dingle I and which are

incorporated herein.[2] Further, with respect to any proffered claim of retaliatory termination, Plaintiff conceded he used profanity and that he was terminated because Plaintiff's "statement consisted a threat and claimed that plaintiff was in danger to [another worker at the Brooklyn Depot at which Plaintiff worked]." (Compl.¶ 12.) As such, Plaintiff's claims must be dismissed.

### III. PROCEDURAL HISTORY

On December 7, 2010, Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission (the "EEOC") claiming he was discriminated on the basis of his sex and subjected to retaliation ("EEOC Charge"). On March 17, 2011, the EEOC closed its file and issued a Notice of Suit Rights.

On June 16, 2011, Plaintiff initiated the action in a related case - Dingle I. On November 21, 2011, Defendant submitted the fully-briefed Motion to Dismiss, which was granted by a July 11, 2012 Order by Chief Judge Carol Bagley Amon granted Defendant's Motion to Dismiss. On August 30, 2012, Plaintiff filed his Amended Complaint [Doc. No. 25]. See Ex. A, Amended Complaint. Liberally construing Plaintiff's Amended Complaint, it appears he purports to allege claims for: (1) Title VII hostile work environment, premised on the allegations that his co-workers sexually harassed him; and (2) Title VII retaliation, premised on the allegations that Defendant did not adequately address his complaints of sexual harassment, and instead retaliated against him.

Thereafter, Plaintiff attempted to amend the Amended Complaint further and filed the Supplemental Amendments[3] on August 30, 2012, September 7, 2012 [Doc. No. 28] September 27, 2012, and November 9, 2012. In Plaintiff's supplemental filing dated August 30,

---

[2] Plaintiff's claims for defamation and breach of the policy similarly should be dismissed for the reasons set forth in the motions to dismiss filed in Dingle I. [See Dingle I, Doc. Nos. 16-20, 22, 38-40, 42.]
[3] Defendant filed four supplemental amendments dated August 30, 2012 [Doc. No. 26], September 7, 2012 [Doc. No. 28], September 27, 2012 [Doc. No. 31] and November 9, 2012 [Doc. No. 37], respectively (collectively, "Supplemental Amendments").

2012, he claims that "after he became upset and used profanity twice," he was suspended on August 29, 2012 for verbally abusing a coworker. (First Supplement to Am. Compl.at 2.) In a late filing on September 27, 2012, Plaintiff again attempted to amend the Amended Complaint by saying the Defendant breached its company policies and breached the collective bargaining agreement. [See Doc. No. 31.] In that amendment, Plaintiff also claimed he was "fired from his job based on the bogus hearsay statement." [See id.] In another untimely filing on November 9, 2012, Plaintiff stated he is "requesting to add the claim Deliberate Indifference" be added to the Amended Complaint. [See Doc. No. 37.] On January 22, 2013, Defendant filed a fully briefed Motion to Dismiss directed to Plaintiff's Amended Complaint and Supplemental Amendments. [See Doc. Nos. 38-40, 42.] That motion currently is pending.

On May 16, 2013, Plaintiff filed this Complaint in the Supreme Court of the State of New York, County of Kings, which was removed to this Court on July 12, 2013. As noted above, Plaintiff alleges fundamentally the same set of facts in the instant action as he alleged in Dingle I, and further seeks payment under a settlement agreement between the parties.

Plaintiff commenced an action against the Union which was removed to this Court on July 22, 2013, captioned *Dingle, Jr. v. Bakery Confectionary, Tobacco Workers and Grain Millers International Union, Local No. 53*, Case No. 1:13-cv-04141-CBA-VVP ("Dingle II"), as is being treated as a related case to Dingle I and this action. On July 29, 2013 the Union filed a Motion to Dismiss, currently pending before this Court. [See Dingle II, Doc. Nos. 8-10, collectively, the "Union Memo."]

4

## IV. RELEVANT FACTS[4]

In Plaintiff's most recent Complaint against Defendant, Plaintiff largely repeats the allegations in his prior Complaint and Amended Complaint in Dingle I and alleges that a photograph of a nude was distributed and that "sexually degrading comments [were made] about plaintiff's genitals and questioning plaintiff's sexual orientation, plaintiff is not gay." (Compl. ¶ 3.) Plaintiff further claims that this conduct violates Defendant's policy on sexual harassment. Plaintiff concedes that Defendant conducted an investigation into his complaint of sexual harassment. (Compl. ¶ 3.) Plaintiff also alleges he was improperly written up for "misbehavior reports for made up rules" and that he was improperly disciplined. (Compl. ¶¶ 9-10.) He also claims the brakes on a truck on which he had been working were disabled. (Compl. ¶ 10.)

In addition, Plaintiff alleges on August 31, 2012, Plaintiff "use[d] profanity against Mr. Douglas, was suspended indefinitely and placed under an investigation by human resources manager Orion DeChristopher." (Compl. ¶ 12.) Thereafter, Plaintiff's employment with Defendant was terminated because, according to the company, Plaintiff's "statement constituted a threat and claimed that plaintiff was in danger to [another worker at the Brooklyn Depot at which Plaintiff worked]." (Compl. ¶ 12.)

On or about January 8, 2013, an arbitration was called regarding "plaintiff's unlawful termination" and "the arbitrator . . . asked if plaintiff, 'would take a settlement.'" (Compl. ¶ 14.) Plaintiff, Defendant and the Union entered into the Settlement Agreement, executed by Plaintiff on January 8, 2013. Pursuant to the Settlement Agreement, Defendant paid Plaintiff valuable consideration in the monetary amount of $13,000, less statutory withholdings, agreed his termination would be classified as a "resignation," and that it would not contest

---

[4] Defendant does not concede the accuracy of the allegations in the Complaint but, for the purposes of this Motion, Defendant accepts the allegations in the Complaint as true.

Plaintiff's application for unemployment benefits. In return for the valuable consideration, Plaintiff agreed to waive any rights to reemployment and *executed a general release of claims.*

The release of claims to which Plaintiff agreed is set forth in Paragraph 4 of the Settlement Agreement. The provision provides, in relevant part:

> All claims under the Collective Bargaining Agreement, if any, by Dingle, including monies, wages, back pay, holiday pay, vacation pay or other fringe benefits that may have been due Dingle and is in full satisfaction by the Company of all its fringe benefit contributions or any other obligations by the Company under the Collective Bargaining Agreement (the "CBA") concerning Dingle's employment, termination of employment and resignation. "The attorney for the company insisted that the money had to be taxed by the company and paid as back pay, under a W2 form." Plaintiff now claims the deductions were wrongly withheld from the settlement payment.

See Ex. 1 to Declaration of Paul Monteleone, attached to the Affidavit of Kristin Witherell, Esq.[5] as Ex. A ("Monteleone Decl."), ¶ 5. (Emphasis added.)[6] Plaintiff concedes receiving payment from Defendant but opposes the tax treatment and that the company refuses to correct its mistake. (Compl. ¶ 15.)

## V. ARGUMENT

### A. RELEVANT STANDARDS

#### 1. Motion to Dismiss

The purposes of a motion to dismiss for failure to state a claim under the Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 116 (2d Cir. 2007). In reviewing the complaint, the Court accepts as true all allegations of fact and draws all reasonable inferences from these allegations in favor of the plaintiff. See id.

---

[5] An Affidavit of Kristin Witherell, Esq. ("Witherell Affidavit") is submitted herewith as Ex. 1.
[6] The Settlement Agreement is incorporated by reference in, and integral to, Plaintiff's Complaint. As such, a the Court may properly consider the document on a Rule 12(b)(6) motion. See, e.g., Wait v. Beck's N. Am. Inc., 241 F. Supp. 2d 172, 184 n. 12 (N.D.N.Y. 2003).

6

"Even a pro se complaint will be dismissed for failing to meet the notice pleading standard of Rule 8(a)(2) if it does not contain 'sufficient factual matter, accepted as true to state a claim to relief that is plausible on its face.'" Crawford v. Lutheran Med. Ctr., No. 08-CV-3429 (NGG) (LB), 2011 U.S. Dist. LEXIS 26072, at *6 (E.D.N.Y. Mar. 9, 2011)[7] (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1939 (2009) (citing references omitted)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. at *6-*7 (quoting Iqbal, 129 S. Ct. at 1949). In this regard, "mere labels and conclusions or formulaic recitations of the elements of a cause of action will not do; rather the complaint's factual allegations must be enough to raise a right to relief above the speculative level." Id. at 7 (citing references and internal marks omitted). "Though courts are required to accept a plaintiff's non-conclusory factual allegations as true, courts may nevertheless determine that the fantastic or delusional character of some factual allegations renders a plaintiff's claims to relief implausible." Id. (citing references and internal marks omitted).

In addition, in cases where the plaintiff is proceeding *in forma pauperis*, the court must dismiss the case if 'at any time the court determines that the action or appeal is frivolous or malicious.'" Id. at *8 (quoting 28 U.S.C. § 1915(e)(2)(B)(i)). "A complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or fact." Id. citing references and internal marks omitted). "Section 1915(e)(2)(B)(i) accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the

---

[7] Copies of unreported cases are attached as Ex. C to the Witherell Affidavit. The required Notice to Pro Se Litigant Who Opposes a Rule 12 Motion Supported by Matters Outside the Pleadings is attached thereto as Ex. D.

complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Id.

### 2. Pleading Standard

Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief and Rule 10(a) requires a caption with the court's name, a title, a file number, and the naming of all parties." Brissett v. New York City Transit Auth., No. 09 CV 874 (CBA) (LB), 2010 U.S. Dist. LEXIS 52722, at *5 (E.D.N.Y. May 27, 2010). In addition, "a plaintiff must format his complaint according to Fed. R. Civ. P. 10(b) and state his claims in numbered paragraphs." Id.

Although under Rule 15(a) of the Federal Rules of Civil Procedure, "a court should freely give [leave to amend] when justice so requires," the Plaintiff should not be given the opportunity to amended when it is plain from the complaint that plaintiff does not have any possibility of asserting plausible claims. Day v. Distinctive Pers., Inc., 656 F. Supp. 2d 331, 337-338 (E.D.N.Y. 2009); see also Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) ("[t]he problem with [plaintiff's] cause[] of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied").

### B. PLAINTIFF'S CLAIMS ARE BARRED BY THE SETTLEMENT AGREEMENT

Plaintiff's Complaint should be dismissed in its entirety because he clearly released all claims of discrimination under the CBA based on events occurring before January 8, 2013 – the date he executed the settlement agreement.

As detailed in Paragraphs 1, 3 and 4 of the Settlement Agreement:

> 1. Dingle whose employment by the Company was suspended August 29, 2012 and terminated September 28, 2012 shall have his status converted to a resignation from employment effective August 29, 2012.

8

> 3. The Company will pay Dingle $13,000 (thirteen thousand dollars), less usual statutory deductions, by mail in said payment to Dingle Tuesday January 17, 2013 at [Plaintiff's address in Cambria Heights, New York].
>
> 4. The payment provided in Paragraph 3 of this Settlement Agreement is *in full satisfaction of all claims under the Collective Bargaining agreement,* if any, by Dingle including monies, wages, back pay, holiday pay, vacation pay or other fringe benefits that may have been due Dingle and is in full satisfaction by the Company of all its fringe benefit contributions or any other obligations by the Company under the parties Collective Bargaining Agreement ("CBA") concerning Dingle's *employment, termination of employment and resignation.*

See Ex. 1 to Monteleone Decl., ¶ 5. (Emphasis added.)

As highlighted in the papers filed by the Union, Plaintiff acknowledged he "carefully read and fully understand[s] all the provisions of this Settlement Agreement." (See Union Memo. at 10.) More specifically, Plaintiff agreed that:

> I Robert Dingle Jr. have carefully read and fully understand all the provisions of this Settlement Agreement and agree to all its terms and conditions. I further understand that by signing this Settlement Agreement, which has been fully explained to me by a Union Representative, I am resigning from my employment with the Company and will not hereafter apply for employment with the Company related entity or Bimbo Bakeries USA.

See Ex. 1 to Monteleone Decl.

As further noted by the Union, the Settlement Agreement operates as an effective bar to Plaintiff's claims released under that agreement. (See Union Memo. at 10.) "New York state courts enforce "a valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into . . . as a private agreement between the parties." Skluth v. United Merchants and Manufacturers, Inc., 163 A.D.2d 104, 106, 559 N.Y.S.2d 280 (App. Div. 1st Dep't 1990). Such a release may still be attacked "for being the product of fraud, duress or undue influence." Id. at 106. However, under New York law, there is no obligation that a valid release be supported by consideration. See N.Y. Gen. Oblig. § 15-303.

9

Here, as noted above, the Settlement Agreement specifically provides the settlement payment was in "full satisfaction" of "any . . . obligations by the Company under the parties Collective Bargaining Agreement ("CBA") concerning Dingle's *employment, termination of employment and resignation*"; and as such, Plaintiff fully released his discrimination claims under the CBA. Section XXIV of the CBA contains a nondiscriminatory provision which expressly provides:

> (A) The Employer and the Union agree not to discriminate against any individual with respect to hiring, compensation, terms or conditions of employment because of such individual's race, color, religion, sex, national origin, age, disability or Vietnam Era Veteran nor will they limit, segregate, or classify employees in any way to deprive any individual employee of employment opportunities because of race, color, religion, sex, national origin, age, disability or Vietnam Era Veteran.
>
> (B) Whenever any words of the masculine or feminine gender appear in this Agreement, such words shall be deemed to refer to both male and female employees without discrimination.

See Ex. 1 to Declaration of Jeanne Carrieri, attached to the Witherell Affidavit as Ex. B.[8]

Given Plaintiff's effective waiver of claims under the CBA concerning his employment, termination of employment and resignation, he cannot sustain his claims against the Defendant in the present action. Even if that were not the case, Plaintiff's allegations would nevertheless be unable to sustain a motion to dismiss as set forth in the motions to dismiss previously filed in the Dingle I matter and which are incorporated herein by reference. [See Dingle I, Doc. Nos. 16-20, 22, 38-40, 42.]

Moreover, the Complaint fails to plausibly allege facts sufficient to set aside the Settlement Agreement based on a waiver of claims. Plaintiff has not alleged, nor could he, that he has returned the monies received in consideration for the settlement of his claims. "A

---

[8] The CBA is incorporated by reference in Plaintiff's Complaint; accordingly, the Court may consider the document on a Rule 12(b)(6) motion. See, e.g., Wait, 241 F. Supp. 2d at 184 n. 12.

10

settlement agreement is ratified when a party accepts payment thereunder." Hewett v. Leblang, No. 12 Civ. 1713 (PKC), 2012 U.S. Dist. LEXIS 93123, at *18-22 (S.D.N.Y. July 5, 2012) (citing Philips South Beach LLC v. ZC Specialty Ins. Co., 55 A.D.3d 493, 493, 867 N.Y.S.2d 386 (1st Dep't 2008)). Indeed, "[a]cceptance of payment "undermines plaintiff's arguments that it executed the release solely out of duress, and that the agreement is void as against public policy." Id. (citing references omitted). Moreover, "plaintiff's failure to repudiate the settlement agreement in prompt fashion, as well as its acceptance of the benefits of the agreement, belies its claims of economic duress." Id. at 493-94; *accord* Mendel v. Henry Phipps Plaza West, Inc., 27 A.D.3d 375, 376, 813 N.Y.S.2d 66 (1st Dep't 2006) (duress claim "belied by" acceptance of benefits and "failure" to repudiate settlement agreement promptly). Based on the face of the Complaint, plaintiff has not returned the amounts paid to him by the Defendant in consideration, and instead wants to keep the money, instead altering the tax treatment. By Plaintiff's conduct, he seeks to retain the benefit of the bargain while circumventing his own obligations thereunder. Under New York law, however, he has ratified the agreement, and may not now avoid its terms. Id.

Further, to the extent that the Complaint seeks to void the contract on grounds of duress, plaintiff fails to state a claim. Under New York law, "'[r]epudiation of an agreement on the ground that it was procured by duress requires a showing of both (1) a wrongful threat, and (2) the preclusion of the exercise of free will.'" Duane Morris LLP v. Astor Holdings Inc., 61 A.D.3d 418, 418-19, 877 N.Y.S.2d 250 (1st Dep't 2009) (emphasis in original) (quoting Fred Ehrlich, P.C. v. Tullo, 274 A.D.2d 303, 304, 710 N.Y.S.2d 572 (1st Dep't 2000)); *accord* Banc of Am. Sec. LLC v. Solow Bldg. Co. II, L.L.C., 47 A.D.3d 239, 249 n.4, 847 N.Y.S.2d 49 (1st Dep't 2007). As alleged in the Complaint, the issue of settlement was raised by the arbitrator.

(Compl. ¶ 14). As further above, Plaintiff "read and fully [understood]" the Settlement Agreement and it was "fully explained" to him by a Union representative. Thus, the Complaint does not allege any threat that could plausibly be inferred to have deprived plaintiff of free will.

### C. PLAINTIFF'S CLAIM FOR BREACH OF THE SETTLEMENT AGREEMENT MUST BE DISMISSED

Liberally construing Plaintiff's Complaint, it appears he is claiming a breach of the Settlement Agreement by Defendant due to Defendant's alleged improper withholding of taxes from the settlement payment.

"Under New York law, an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994) (citation omitted). A contract exists where there is "an offer, acceptance, consideration, mutual assent and intent to be bound." Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc., 447 F. Supp. 2d 329, 337 (S.D.N.Y. 2006). Plaintiff cannot sustain his claim for breach of contract because he is unable to allege adequately the third and fourth points.

Plaintiff alleges, "the attorney for the company insisted that the money had to be taxed by the company and paid as back pay, under a W2 form" which is consistent with the terms of the Settlement Agreement, providing for payment subject to statutory deductions. (Compl. ¶ 15.) Given Plaintiff's allegations, he cannot now claim any withholding is a breach of their agreement. Further, no breach may be found where the law requires Defendant to withhold applicable taxes. See Archie v. Grand Cent. P'shp, 86 F. Supp. 2d 262, 273 (S.D.N.Y. 2000) ("although exceptions can be found, the courts are generally of one mind that withholding from back wages must be made, whether in the FLSA context or analogous employment discrimination contexts") (citing references omitted). Thus, Plaintiff has not alleged any breach

12

or damages he is due under the Settlement Agreement. Accordingly, any claim for breach of contract must be dismissed.[9]

### D. PLAINTIFF'S CLAIMS FOR RETALIATION MUST BE DISMISSED

Similar to Plaintiff's belated filing on September 27, 2012, Plaintiff appears to repeat his allegation that he was improperly terminated based on a "hearsay" statement. [See Dingle I, Doc. No. 31.] As noted in the motions to dismiss filed in the Dingle I case, Plaintiff has failed to allege facts sufficient to withstand this purported retaliation claim.

To plead a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) he participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging him; and (3) there exists a causal connection between the protected activity and the adverse action. Horne v. Buffalo Police Benevolent Ass'n, No. 07-CV-781C, 2010 U.S. Dist. LEXIS 53152, at *23-24 (W.D.N.Y. May 25, 2010) (quoting Patane, 508 F.3d at 115 (internal marks omitted, other citing references omitted)).

Notwithstanding the fact that Plaintiff's termination is now a "resignation" per the Settlement Agreement, Plaintiff cannot sustain a claim for retaliation. Indeed, Plaintiff concedes his suspension was because he used profanity toward a coworker and further concedes he was terminated because his "statement constituted a threat and [the Company] claimed that plaintiff

---

[9] Likewise, "although plaintiff seeks damages for the negligent and/or intentional infliction of emotional distress, those claims must be dismissed as well. The elements of an intentional infliction of emotional distress cause of action are: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal conduct between the conduct and the injury; and (iv) severe emotional distress." Quinones v Eihab Human Services, Inc., No. 150169-08, 2009 N.Y. Misc. LEXIS 5729, at *11 (N.Y. Sup. Ct. May 22, 2009) (citing Howell v. New York Post Co., 81 N.Y.2d 115, 121, 612 N.E.2d 699, 596 N.Y.S.2d 350 (1993)). "The events plaintiff describes, even when viewed cumulatively and assuming [he] can prove them at trial, do not amount to conduct even close to approaching the "'threshold of outrageousness needed to support a cause of action for intentional infliction of emotional distress.'" Id. at *11-2 (quoting Graupner v. Roth, 293 A.D.2d 408, 410, 742 N.Y.S.2d 208 (1st Dep't 2002)). Nor are Plaintiff's allegations sufficient to sustain a claim for negligent infliction of emotional distress. See id.

was in danger to [another worker at the Brooklyn Depot at which Plaintiff worked]." (Compl.¶ 12.) As such, Plaintiff has not alleged the third prong cited above and his purported claim for retaliation must be dismissed.

### E. PLAINTIFF'S CLAIMS RELATED TO HIS CRIMINAL CONVICTION MUST BE DISMISSED

On a stray page of Plaintiff's Complaint he also attempts to allege a violation of "Title 8 of the NY City Administrative Code and a violation of NY Corr. Law Article 23-4." (Compl. at 26.)[10] As noted above, Plaintiff repeated his claims against the Company related to his employment and termination. Even if that were not the case, Plaintiff has not adequately pled a claim of discrimination or retaliation based on his criminal conviction.

Administrative Code of the City of New York § 8-107 provides in part:

> 10. Criminal conviction. (a) It shall be unlawful discriminatory practice for any person to deny any license or permit or employment to any person by reason of his or her having been convicted of one or more criminal offenses, or by reason of a finding of a lack of "good moral character" which is based on his or her having been convicted of one or more criminal offenses, when such denial is in violation of the provisions of article twenty-three-a of the correction law.

Similarly, New York Correction Law, Article 23-A, § 752[11] provides:

> No application for any license or employment, and no employment or license held by an individual, to which the provisions of this article are applicable, shall be denied or acted upon adversely by reason of the individual's having been previously convicted of one or more criminal offenses, or by reason of a finding of lack of "good moral character" when such finding is based upon the fact that the individual has previously been convicted of one or more criminal offenses, unless:
>
> > (1) there is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought or held by the individual; or

---

[10] The portion of Plaintiff's Complaint is not contained in numbered paragraphs and does not have a page number. As such, the page number refers to the page number in Defendant's Notice of Removal [Doc. No. 1].

[11] There is not a section "23-4." Defendant assumes, for purposes of this Motion to Dismiss, that Plaintiff attempted to refer to Article 23-A.

14

> (2) the issuance or continuation of the license or the granting or continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public.

In order to make out a claim for discrimination or retaliation, a plaintiff must show that (1) [he] was engaged in protected activity, (2) [his] employer was aware that she participated in such activity, (3) [he] suffered an adverse employment action based upon [his] activity, and (4) there is a casual connection between the protected activity and the adverse action. See e.g., Forrest v. Jewish Guild for the Blind, 3 NY3d 295, 312-313, 819 N.E.2d 998, 786 N.Y.S.2d 382, (2004); Hernandez v. Bankers Trust Co., 5 AD3d 146, 773 N.Y.S.2d 35 (2004); Pace v. Ogden Servs. Corp., 257 AD2d 101, 104, 692 N.Y.S.2d 220 (1999)).

In proffered support of these attempted claims, Plaintiff alleges that Rina Carpano "presented a copy of his criminal record, stating, 'we didn't know about this when you were hired, forget the whole thing and we will let you keep your job.'" (Compl. at 26.) Nowhere in the Complaint has Plaintiff alleged there was an adverse action related to his criminal record; to the contrary, Plaintiff alleges that he would be permitted to retain his employment despite his criminal record. See Quinones, 2009 N.Y. Misc. LEXIS 5729, at *8 ("the human rights law does not erode an employer's right to decide whether an employee should be fired, provided there is no discriminatory motive for the firing.")

As such, Plaintiff's claims related to his criminal conviction must be dismissed.

## VI. CONCLUSION

Based on the foregoing, Defendant respectfully request that the Court dismiss Plaintiff's Complaint in its entirety, with prejudice, without leave to amend the Complaint.

Dated: New York, New York
August 23, 2013

                                                      Respectfully submitted,

                                                      JACKSON LEWIS LLP
                                                    *ATTORNEYS FOR DEFENDANT*
                                                    666 Third Avenue, Floor 29
                                                    New York, New York 10017
                                                    (212) 545-4000
                                                    (212) 972-3213 (Fax)
                                                    fischera@jacksonlewis.com
                                                    witherek@jacksonlewis.com

                                                    _____
                                                    A. Robert Fischer (AF 2934)
                                                    Kristin L. Witherell (KP4769)

4816-1793-1541, v. 1